Filed 9/19/22  P. v. Oscar M. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B311304 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PJ52822) |
| v. | |
| OSCAR M., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Fred J. Fujioka, Judge.  Affirmed in part, reversed in part and remanded with directions.

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Rama R. Maline, Deputy Attorney General for Plaintiff and Respondent.

_____

Oscar M. was declared a ward of the juvenile court and committed to the Department of Corrections and Rehabilitation, Division of Juvenile Facilities (DJF) (commonly referred to as the Division of Juvenile Justice or DJJ) after the court sustained a Welfare and Institutions Code section 602 petition alleging Oscar had murdered Brayan Andino (Pen. Code, § 187, subd. (a)) and had actively participated in a criminal street gang conspiracy to commit murder (Pen. Code, § 182.5). The juvenile court specially found true the allegation Oscar had committed the murder to benefit a criminal street gang (Pen. Code, § 186.22, subd. (b)(1)(C)),[1] and the special-circumstance allegations he did so by means of lying in wait (Pen. Code, § 190.2, subd. (a)(15)) and while an active participant in a criminal street gang and for the purpose of furthering the activities of the gang (Pen. Code, § 190.2, subd. (a)(22)).[2]

On appeal Oscar contends Assembly Bill No. 333 (Stats. 2021, ch. 699, § 3) (Assembly Bill 333), effective January 1, 2022, which increased the proof requirements for imposition of a criminal street gang enhancement by modifying the definitions of "criminal street gang" and "pattern of criminal gang activity" and clarifying the evidence needed to establish an offense was committed to benefit a criminal street gang, requires reversal of the section 186.22, subdivision (b), gang enhancement; the

---

[1] At times we employ the shorthand "to benefit a criminal street gang" to mean for the benefit of, at the direction of or in association with a criminal street gang with the specific intent to promote, further or assist in criminal conduct by gang members. (See Pen. Code, § 186.22, subd. (b)(1).)

[2] All further statutory references are to the Penal Code.

section 182.5 gang conspiracy jurisdiction finding; and the section 190.2, subdivision (a)(22), special-circumstance finding. We agree. We reverse the disposition order, including the court's gang-related findings under sections 182.5, 186.22, subdivision (b), and 190.2, subdivision (a)(22), and remand the matter to allow the People, if they wish, to pursue those allegations in the juvenile court under the new requirements of Assembly Bill 333. We affirm the jurisdiction finding Oscar committed a special circumstance murder by lying in wait.[3]

## FACTUAL AND PROCEDURAL BACKGROUND

Oscar M., an associate of the MS-13 criminal street gang, was 15 years old in October 2017 when, following instructions from MS-13 gang members, he participated in a conspiracy to lure 15-year-old Andino to Balboa Park to smoke marijuana and then to a deserted mountain trail in Lopez Canyon, where, according to the plan, members of the MS-13 criminal street gang were waiting to kill Andino. At Lopez Canyon MS-13 gang members brutally murdered Andino with a machete and threw his body off a cliff. Although Oscar was not present at either Balboa Park or Lopez Canyon at the time of the offenses, he was a significant participant who knew the plan was to kill Andino; and he remained in communication with MS-13 members throughout the day of the murder to ensure Andino's arrival at the designated location.

---

[3] Oscar has also challenged on appeal the propriety of the court's decision to commit him to the DJF and the court's calculation of predisposition custody credits. Because our remand will necessitate entry of a new disposition order, we do not reach these additional challenges to the disposition order.

Los Angeles Police Detective Steven Aguilar testified as an expert on the MS-13 criminal street gang. According to Aguilar, MS-13 gang member John Garcia was convicted of making criminal threats in 2017 and Carlos Arteaga, whom Aguilar knew to be an MS-13 gang member from Aguilar's prior conversations with Arteaga's brother Kevin Arteaga, an MS-13 gang member, was convicted of two counts of attempted murder in 2017.[4] Based on a hypothetical set of facts approximating the murder in this case, Detective Aguilar opined the murder was committed to benefit a criminal street gang.

Martin Flores testified as a gang expert for the defense. He opined Oscar did not commit the murder to benefit a criminal street gang. Rather, based on the testimony of Oscar's girlfriend and coconspirator, Y.M., that MS-13 gang members had told her they were "watching her and her baby" and she better not disobey

---

[4] Oscar's counsel objected to evidence of Arteaga's status as an MS-13 gang member, asserting it was based on hearsay as Detective Aguilar acknowledged he had no personal knowledge Arteaga was a gang member and did not testify at Arteaga's trial. The court overruled the objection. While Oscar's appeal was pending, the Supreme Court decided *People v. Valencia* (2021) 11 Cal.5th 818, 839, making clear the particular facts necessary to establish a "pattern of criminal gang activity" "must be proved by independently admissible evidence" and "may not be established solely by the testimony of an expert who has no personal knowledge of facts otherwise necessary to satisfy the prosecutor's burden."

Although Oscar, relying on *People v. Valencia,* contends the court erred, he acknowledges that Garcia's conviction and Oscar's offense provided sufficient evidence of two predicate offenses under the law in effect at the time of the jurisdiction hearing.

them, Flores asserted that Oscar would interpret any threat to Y.M. and his child to be directed to him, too, and opined Oscar had participated in the murder to protect his loved ones, not to benefit MS-13.

The court sustained the allegations of murder and conspiracy to commit murder and found all the special allegations true. The court declared Oscar a ward of the court, identified the maximum term of physical confinement as "youth life" without further explanation, and committed him to the custody of the DJF.

## DISCUSSION

1. *Assembly Bill 333 Requires Reversal of the True Findings on the Criminal Street Gang Enhancement*

Section 186.22. subdivision (b), provides for enhanced punishment when a defendant is convicted of a felony committed "for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members." Assembly Bill 333 made a number of significant modifications to the requirements for proving a criminal street gang enhancement. As we have previously held (see *People v. Delgado* (2022) 74 Cal.App.5th 1067, 1087), under the principles enunciated in *In re Estrada* (1965) 63 Cal.2d 740, Assembly Bill 333's amendments to section 186.22 apply retroactively to defendants whose convictions (and juvenile adjudications) are not yet final. (See also *People v. E.H.* (2022) 75 Cal.App.5th 467, 478; see generally *Tapia v. Superior Court* (1991) 53 Cal.3d 282, 301 [statutory amendments that benefit a defendant by redefining conduct subject to criminal sanction are applied to cases pending on direct appeal].)

5

Previously, proof of a "pattern of criminal gang activity" as defined by section 186.22, subdivision (e), required evidence of two or more identified predicate offenses, "provided at least one of these offenses occurred after the effective date of this chapter and the last of those offenses occurred within three years after a prior offense, and the offenses were committed on separate occasions, or by two or more persons."  As amended, subdivision (e)(1) now requires proof that (i) the last offense used to show the pattern of criminal gang activity occurred within three years of the date the currently charged offense is alleged to have been committed; (ii) the offenses were committed on separate occasions or by two or more gang members, rather than simply "persons"; and (iii) the offenses commonly benefited a criminal street gang, and the common benefit was more than reputational.  In addition, (iv) the currently charged offense cannot be used to establish the pattern.  (See *People v. Tran* (Aug. 29, 2022, S165998) __ Cal.5th __, ___ [2022 Cal. Lexis 5119]; *People v. Renteria* (2022) 13 Cal.5th 951, 961, fn. 6; *People v. Lopez* (2021) 73 Cal.App.5th 327, 346.)

New section 186.22, subdivision (g), provides, "to benefit, promote, further, or assist means to provide a common benefit to members of a gang where the common benefit is more than reputational."  The new subdivision provides as examples of a common benefit that is more than reputational "financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant."

Oscar asserts, the People do not dispute[5] and we agree, no evidence was provided at Oscar's jurisdiction hearing (because Assembly Bill 333 had not yet been passed by the Legislature) that the predicate offenses benefitted the gang, or even, if so, that the benefit was more than reputational. Accordingly, we reverse the juvenile court's section 186.22 finding. (See *People v. Rodriguez* (2022) 75 Cal.App.5th 816, 823; *People v. Lopez, supra,* 73 Cal.App.5th at p. 346.)[6]

---

[5] In his opening brief, filed shortly before Governor Newsom signed Assembly Bill 333 into law, Oscar argued the juvenile court had abused its discretion by committing him to the DJF, failed to properly apply section 654 to adjudications for both murder and conspiracy to commit murder and erred in calculating his presentence custody credits—issues that are moot in light of our remand for a new disposition hearing. We granted Oscar's request to file a supplemental brief addressing the new legislation's effect on the gang enhancement (§ 186.22, subdivision (b)) and subsequently invited the parties to brief whether Assembly Bill 333 modified the requirements for proving a criminal street gang conspiracy (§ 182.5) or the gang special-circumstance allegation (§ 190.2, subd. (a)(22)). Despite our invitation and additional briefing by Oscar, the Attorney General's respondent's brief did not discuss Assembly Bill 333; and he filed no supplemental brief. The Attorney General's silence—neither indicating whether the People agreed or disagreed with Oscar or had not yet formulated a position on the questions we presented—is surprising.

[6] As discussed (see fn 4, above), Oscar does not contend the evidence was insufficient to support the gang enhancement as the law existed at the time of the jurisdiction hearing.

2. *Assembly Bill 333 Also Applies Retroactively to the Juvenile Court's Special-circumstance Gang Finding and Its Gang Conspiracy Jurisdiction Finding*

Oscar contends Assembly Bill 333's amendments to section 186.22 also require reversal of the juvenile court's section 190.2, subdivision (a)(22), special-circumstance finding and its section 182.5 gang conspiracy jurisdiction finding, as both statutes incorporate the proof requirements for "criminal street gang" as defined in section 186.22.[7]

The several appellate courts that have addressed the issue do not agree whether Assembly Bill 333's revisions to section 186.22 may be applied to sections 190.2, subdivision (a)(22), and 182.5 without running afoul of the California Constitution. Both statutes were added by voter initiative (Proposition 21) on the March 7, 2000 ballot. (See *Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 897; see also *People v. Lee* (2022) 81 Cal.App.5th

---

[7] Section 190.2's list of special circumstance murders includes subdivision (a)(22), "[t]he defendant intentionally killed the victim while the defendant was an active participant in a criminal street gang, as defined in subdivision (f) of Section 186.22, and the murder was carried out to further the activities of the criminal street gang."

Section 182.5 provides, "any person who actively participates in any criminal street gang, as defined in subdivision (f) of Section 186.22, with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, as defined in subdivision (e) of Section 186.22, and who willfully promotes, furthers, assists, or benefits from any felonious criminal conduct by members of that gang is guilty of conspiracy to commit that felony and may be punished as specified in subdivision (a) of Section 182."

232, 240 (*Lee*) [addressing section 190.2, subdivision (a)(22)], petn. for review pending, petn. filed Aug. 16, 2022 (S275449); *People v. Lopez* (2022) 82 Cal.App.5th 1 (*Lopez*) [addressing section 182.5].) Under the California Constitution a statute adopted through a voter initiative may be amended "only when approved by the electors unless the initiative statute permits amendment or repeal without the electors' approval." (Cal. Const., art. II, § 10, subd. (c); *People v. Superior Court* (*Pearson*) (2010) 48 Cal.4th 564, 568.) Proposition 21 provided it could not be amended by the Legislature except by a two-thirds vote.

In *People v. Rojas* (2022) 80 Cal.App.5th 542, 547 (*Rojas*), petition for review pending, petition filed August 3, 2022 (S275835), a divided panel of the Fifth District held Assembly Bill 333 could not alter the proof requirements for a "criminal street gang" from those in effect at the time the voters enacted Proposition 21. (See *Rojas*, at p. 547 [because Assembly Bill 333 was passed without voter approval and without the requisite two-thirds vote in both houses of the state Legislature, it cannot amend section 190.2, subdivision (a), without violating the constitutional prohibition on legislative amendment of a statute adopted by initiative].) In *Lee, supra,* 81 Cal.App.5th 232, in contrast, our colleagues in Division Four of this court rejected the *Rojas* analysis that Proposition 21's addition of section 190.2, subdivision (a)(22), fixed the definition of "criminal street gang" to the proof requirements in existence at the time the initiative was enacted: Assembly Bill 333's amendment to the definition of criminal street gang, the court explained, "does not prohibit what Proposition 21 authorized, or authorize what Proposition 21 prohibited. We find nothing to suggest that the electorate intended to impose a time-specific incorporation of the term

'criminal street gang' in the gang-murder special circumstance statute. Thus, we conclude that the term 'criminal street gang' as incorporated in the gang-murder special circumstance statute was 'intended to conform at all times' and 'remain permanently parallel' to section 186.22." (*Lee,* at p. 245; see *People v. Lopez, supra,* 73 Cal.App.5th at p. 347 [defendant found guilty of murder with a section 190.2, subdivision (a)(22), special-circumstance finding is entitled to the benefit of Assembly Bill 333's narrowing of the definition of a criminal street gang and addition of new elements to prove a pattern of criminal activity].)

Although the People have not taken any position on the question in the case at bar, the Attorney General in prior cases has argued Assembly Bill 333 cannot modify section 182.5 or section 190.2, subdivision (a)(22), without violating the California Constitution. (See *Lopez, supra,* 82 Cal.App.5th at p. 7; *Lee, supra,* 81 Cal.App.5th at pp. 240-241.) The *Lopez* court, a different panel of the Fifth District from the one that decided *Rojas,* rejected the Attorney General's argument, "agree[ing] with *Lee*'s conclusion that 'the electorate clearly knew how to express the intent to freeze a statutory definition'"; "[t]he absence of such time-specific language in section 182.5 leads to our rejection of the People's claim.'" (*Lopez,* at pp. 24-25.)

We also agree with the analysis in *Lee, supra,* 81 Cal.App.5th 232 and *Lopez, supra,* 82 Cal.App.5th 1. Oscar is entitled to the benefit of the ameliorative changes in the law made by Assembly Bill 333 for purposes of the criminal gang conspiracy and special-circumstance findings, not only for the section 186.22 enhancement.

## DISPOSITION

The juvenile court's gang-related findings under sections 186.22, 190.2, subdivision (a)(22), and section 182.5 and the disposition order are reversed. The matter is remanded for the People to elect whether to proceed on one or more of those allegations at a new jurisdiction hearing. If the People elect not to do so, the court shall proceed immediately to a new disposition hearing. In all other respects, the juvenile court's jurisdiction findings are affirmed.


PERLUSS, P. J.


We concur:


SEGAL, J.


FEUER, J.

11